The next matter on our calendar is Christopher Miller v. City of Ithaca. Thank you. Good morning. If it pleases the Court, my name is John Hunt, and I represent the City of Ithaca as well as the other appellants. We're here today because we respectfully submit that the district court erred in not granting the defendant's motion under Federal Rule of Civil Procedure 60B for a relief from judgment. The city had requested relief from a judgment that it awarded the plaintiff a half a million dollars in attorney's fees and expenses. The city asked for that relief because the verdict on which the judgment was based or was primarily based was vacated by this court. There were two causes of action, and one was vacated by this court. That's correct, Your Honor. Was that the larger one, would you argue, the more serious? That's correct, Your Honor. There were two claims that resulted in a combined judgment. One was on one claim for retaliation, which the parties referred to below as the notice of discipline claim, and that resulted in a judgment for $260,000. There was a second claim for retaliation based on what's called the BEATS assignments, and that resulted in a judgment for $20,000. When this case was last before the circuit, the circuit reversed the judgment on liability grounds on the notice of discipline claim, which is the bigger one. Because the court had gotten the jury charge wrong. Correct, Your Honor. That's right. Under the Nassar case. But does the fees judgment stand? Yeah. The second, yes. This Court ruled on the parties' challenges to the fee award. The appellant. This is the quote. We affirm the district court's decision as to fees and costs. They didn't splice it. They didn't reduce it. They didn't say go back and take another look in light of the split verdict here on the convictions. I mean, it seems to me that that's pretty clear, isn't it? Well, correct, Your Honor. Although in the actual operative language in the mandate, it says the case is remanded to the district court for further proceedings consistent with the opinion. Right. But consistent with the opinion, it was to affirm the decision as to fees and costs. It seems to me you're really quibbling with the circuit's mandate or the circuit's decision. You came to the right place. Except that it's too late now to fix that, right? Well, Your Honor, we don't believe so. And here's why. We think, again, that the language of the mandate sent the case back for a retrial. On one count. On the notice of the correct. But not on fees and costs, right? Well, Your Honor, I think that it necessarily requires a reassessment of the fees and costs. I think that's inherent. And because the standard for awarding fees and costs, the critical element of that is the degree of success that the plaintiff achieved during the course of the litigation. And what's happened because of the proceedings in this case is the initial judgment that the district court made on the degree of success is no longer valid. Two-thirds or more of the actual damages are gone. In other words, if Judge Sharp were deciding that issue today, it would be a very different situation. All there would be is $20,000. But this was all before this court or a different panel of this court before, right? You could make that argument then. Oh, Your Honor. Maybe you even did. But this court affirmed the costs and judgment award. Your Honor, what we challenged when the case was previously here was the actual substance of the fee award. And the plaintiff also challenged it. What we didn't foresee was that this would end up in the posture that it is now. And I think that because the way the mandate was written, where it says that it's remanded for further proceedings consistent with the opinion, normally when a ---- I'm sorry to interrupt you, but how do you square the language that I quoted to you with saying that that's open to reconsideration below? Because I think in order to have further proceedings, there's going to have to be another evaluation of the attorney's fees. So what portion of the costs and fees was affirmed by the circuit when it said, we affirm the district court's decision as to fees and costs? I'm not sure that any portion of that actually was. I think that at the end of this ---- Is it an error for this circuit to say that? I'm not sure it was error, Your Honor. But I think what was intended ---- Not error, then what? Pardon? Not error, then what? I think, Your Honor, I think it was ---- I think there was a directive by the court to go back to the district court, retry the notice of discipline claim, which was responsible for the bulk of the damages and the bulk of the fees. And then after, that would finally be the conclusion of this litigation. We've had three trials. And at that point, there would be a full ---- there would be a full examination of the attorney's fees question. Well, that's what you'd like. I just don't see how you can squeeze that out of the language I just quoted you. I mean, you didn't make a motion for reconsideration, right? That's correct, Your Honor. The way we interpreted this was that by sending it back for further proceedings consistent with the order, that that inherently would lead to the vacation of the ---- or vacating of the attorney's fees award. By the district court. Right. Correct, Your Honor. Even though its determination had been affirmed by this court. Correct. Given that it was an ---- yes, given that it's an ongoing case, I don't think they're going to ---- the district court is going to have any choice. When it goes back for trial, the conclusion of that trial, there's going to have to be another attorney's fees determination. Well, that would be for fees since the circuit's decision, right? If there's a win. However ---- If there's a loss, then not. Well, I think that the original opinion in the case didn't segregate the fees from the notice of discipline claim, from the lesser claim, from the beats assignment claim. So the amount you gave us was the damages awarded, but the fees were not so segregated like the damages. The fees were a lump sum. As I recall, I don't think the ---- right, I think, Your Honor, I think the district court made a lump sum determination and then what he did was he went through the different factors and then he applied a percentage reduction, and that's how he arrived at his decision. And when it came up to this court, the parties, both sides, challenged that analysis. But it was being challenged on the merits. Thank you. You've reserved three minutes for rebuttal. We'll hear from Mr. Miller's attorney. May it please the Court. My name is A.J. Bossman. I'm here on behalf of Christopher Miller, the plaintiff in this action. Do you expect to try, retry the notice of discipline cause of action? For termination, correct. That's the one that this court vacated. That's correct. And you then will ask for fees yet again? For fees subsequent to the remand, yes. The decision that this court made, I think, was clear. The defendants have said that they are seeking clarity, special appendix at 60. Seeking clarity of this court's decision should have been done in the manner of a writ of mandamus or a petition to recall the mandate or a motion for reconsideration.  I don't think it was so much that they didn't understand what the mandate or the decision said. It was the 15th day that they moved for an extension of the stay of the judgment. Fourteen days they had to seek re-argument. Why request an extension of the stay if they did not understand the mandate? I think that they took the gamble that they were going to get Judge Sharp to extend the stay on the judgment, both for the fees and the compensation. It was Judge Sanis who tried the case, right? The matter was transferred immediately to Judge Sanis upon the application of the defendants to extend the stay. I see. And why? Why was it transferred? I do not have any information regarding that, Your Honor. They also refused to pay the judgment on the work assignment, the bead assignments claim, even though they acknowledged it was due at least as early as March 7th. You mean the damages to Mr. Miller? The $20,000 judgment, that's correct, Your Honor. They have not paid that yet? They did. But three months later, after we went through the execution and sought the order to show cause, the record, special appendix 37, they acknowledge that that payment is due, but yet had not paid it. They represented to the court that they were appealing that $20,000 judgment, but they weren't, and the paperwork bears that out. They signaled their intent to seek further review and or appeal. And they said, in S.A. 60, all we're seeking is clarification on what we believe was an ambiguous summary order. So if they're seeking clarity from this court, now we say that that's not a collateral order, because they can't do it under Rule 60. We say that, okay, this court, and I looked far and wide to find this, while the power to act on its mandate after the term expires survives to protect the integrity of the court's own processes, it has not been held to survive for the convenience of the litigants. That's Briggs v. Pennsylvania Railroad Company, 334 U.S. 304 at 306, a 1948 decision. Additionally, whatever is before this Court, the Supreme Court has said, and disposed of by its decree, is considered as finally settled. That's N. Ray, excuse me, Sanford, Fork, and Toole, an 1895 decision by Justice Gray, 160 U.S. 247. The circuit, they were considering at that point, the Supreme Court, is bound by the decree as law of the case and must carry it into execution according to the mandate. That's the mandate rule. The Court cannot vary it or examine it or for any other purpose other than execution or give any other or further relief or review it even for apparent error upon any matter decided on appeal or intermeddle with it further than to settle so much has been remanded, citing Stibald v. United States, 12 Petition 488-492. Also citing Texas and Pacific Railway v. Anderson, 149 U.S. 237. If the mandate is misconstrued, then the Court can be controlled by a new appeal or by a writ of mandamus to execute the mandate. So as far as the jurisdictional issue that's before you in this appeal, we would argue that in the absence of the motion for reconsideration to seek clarity from this Court, in the absence of a motion, I'm sorry, a petition for recalling the mandate, which they certainly could do, there isn't, this is not a collateral order of the type that's contemplated by the courts to provide relief in these circumstances. Ginsburg. So, counsel, I don't disagree or take issue with the citations you bring to us, but speaking for myself only, the thought of getting fees for trying a case a second time after our Court vacated that damage award seems a little egregious. That's all I have to say. Your Honor, the defendants themselves concede that the second and third trials had nothing to do with the notice of discipline for termination. They concede that. And they concede that, I can tell you at what page, the page that they concede that at. We're talking now about a fourth trial, right, though? No, I'm saying that they're conceding now that they have, that the second and third trial had nothing to do with the notice of discipline for termination. Right. But isn't that the case that would be tried? No. No. The second and third trials were only for the Beetz assignments. The adverse action that was determined by the jury and the judgment that was eventually entered, the $20,000 judgment and the attorney's fees, the second and the third trial, all had to, all they had to do is with the notice of discipline for the, not the notice of discipline, the Beetz assignments, retaliatory conduct. But not the notice of discipline, cause of action, that this Court sent back for retrial. That was tried on the first trial, along with the Beetz assignment claim. And the plaintiff won a verdict on both claims. They set aside the verdict, liability and damages, on the issue of the Beetz assignment. We did trial number two. Plaintiff won. We did trial number three. Plaintiff won. We did a segregated damages claim that the plaintiff, which constituted a fourth case, only to do with the Beetz assignments. So three quarters of what we're talking about here was exclusive to the Beetz assignments. The first trial also included the Beetz assignments. Are you expecting a new trial on the notice of discipline? The notice of discipline for termination has been scheduled for trial. Originally it was scheduled for October. But due to defense counsel's schedule and. There will be another trial. That's scheduled for February. Yes. Just that issue. Just that issue. And if you win on that one, you're going to seek fees for what you've incurred since the Court of Appeals decision, right? Correct. And I think what you're saying is that the fees incurred prior to the Court of Appeals decision were pretty hard to segregate between the various causes of action because of what you've just described as the different trials. Correct. And if we're going to talk about the merits of the claims at issue here, then it's important to note that a party need not succeed on every issue, nor even the most crucial one. Citing LaRouche v. Kessler, 20 Fed Third, 68 at 71. This circuit, 1994. Carroll v. Blinken, 42 Fed Third, 122, second, 1994. And Texas State. Are these cases all in your brief? No, Your Honor. These are cases I researched after receiving the reply brief. So will you put them in the form of a memo to us? I'd be happy to, Your Honor. Can you do that within five days? Absolutely. And, Counsel, you'll have five days after that to respond to the citation of Kessler. Also, we know that the amount of damages doesn't have to be proportional or related to the amount of fees, because fee shifting has its own values. And Justice Kagan recently said in 2016 in Kurtzang v. John Wiley and Sons, 136, Supreme Court, 1979, applications for attorney's fees should not result in a second major litigation. The order and judgment was presented to this court. My grievances with that order and judgment were denied. Their grievances with that order and judgment were denied. The order was affirmed. Now, if the basis of the court's order not to extend the stay, if that's what they're appealing, then that is based upon an abuse of discretion standard. My time is run. Thank you. Mr. Hunt, you have, you've reserved three minutes. Thank you, Your Honor. Just as a point of clarification, and with all due respect to counsel, I believe that the second trial in this case involved a retrial of liability on the Beetz assignment claim, but it actually involved, but then the second half of the same trial involved damages on both claims. So the $260,000 that was awarded came about during the second trial and then Judge Sharp offered the plaintiff a remediator versus what they'd recovered on the Beetz assignment claim at the second trial or go back for a third trial just on damages on that claim. Well, the plaintiff rejected the remediator that Judge Sharp had offered, so that's why it was a third trial on that claim. So the City of Ithaca never heard of settling cases? Your Honor, I believe there have been settlement discussions. The parties have discussed settlement. I'm not surprised to hear that. All right, continue. Sorry, just on that same line, and I don't want to know anything about them, but have you been through this court's mediation process? I mean, you folks have been down here a couple of times. I was with you the first time as well as now. Yes, Your Honor, I believe there was a camp conference in the case back when it was up at the circuit the last time. So you did go through that process? Yes, I believe that's right, Your Honor. Thank you. That's all I wanted to know. As to counsel's argument that there's no jurisdiction, we obviously very much disagree with that. We think this is an example where the jurisdiction is conferred under the collateral order doctrine. We have a very separate issue, a very separate claim of right involving the attorney's fees. We also have something that is separate from the main controversy, as evidenced by the fact that we're all going back for another trial. And thirdly, that if there's a disbursement, if we pay the funds over, it would be very, very hard, if not impossible, to ever recover those. So in a sense — On what basis would you be recovering them? Well, if there were a later determination by the court, as we think there should be, as to what the appropriate amount of attorney's fees in connection with the notice of disciplinary claim. Isn't that decided by the summary order that Judge Sullivan read to you? Your Honor, we believe that that was vacated as part of the remand. But that was part of the order that vacated the one cause of action but still imposed the fees. Your Honor, I believe that our position would be that under well-established case law, when the verdict is vacated, the fee award that goes along with the verdict is vacated. You cite no such well-established case. Well, I think we did cite cases that say that where the verdict or judgment in a case involving fee shifting is vacated, then that naturally follows that the attorney's fee award is vacated. But it doesn't naturally follow in this particular order. Well, Your Honor, our position would be that it follows from the court's direction to the court's direction. Okay. So the thing to have done was to go right back to that panel who issued that order and say, Can you tell us what you meant by giving all the fees and only one cause of action? But that time has long passed. Well, Your Honor, we felt that this would be another proceeding on fees pursuant to the court's instruction on further proceedings. Well, all right. Thank you very, very much. Thank you both. Thank you, Your Honor. We'll reserve decision. The next item on our calendar is Michael Newsom versus several people who are on submission. Thank you. May it please the Court. The killing of Mouth and Jules was an unreasonable seizure under the Fourth Amendment for three reasons. Under the totality of the circumstances test in the Second Circuit, there was no danger in this case. If you look at the cases decided in other circuits, one of the key things that they look at was whether the dogs posed any danger to the police officers. Here, there was absolutely no danger. In fact, they were killed days after they were seized and days after any legitimate search was conducted in the residence. The second reason is that they also had days to consider the proper course of action in this case. The dogs had been seized by the Humane Society and then they continued to, you know, reside at the Humane Society and then the killing occurred after that, days after that. What's the status of the Humane Society, if we can tell from the record, as a state actor? Does it operate to euthanize animals that it's holding just to some separate entity? It must have some authority to do that. It's a little bit difficult to tell from the complaint, but I think what the answer is is that they would be properly characterized as being in a conspiracy with the state. So the legal effect of that is that they can be held liable. Someone told the Humane Society that they can euthanize these dogs, correct? They were instructed by, as far as the record reveals, they were instructed by the police to do that and because of that, they would be involved as a conspirator with the police in doing that. They never said why? They never said, do we have to? Can we put them out for adoption or anything like that? The record doesn't say anything about that. They never tried to defend or represent the interests of the dogs. There's nothing that reveals them trying to defend the interests of the dogs. There was a telephone, well, I believe two telephone conferences, and in both telephone conferences, the Humane Society was essentially repeating the line or the explanation that was given by the police. They were aggressive and dangerous? Correct. But the evidence in the record is that they pose no dangers to the officers. And that's critical because... When you say the evidence in the record, all we have is a complaint, right? Correct. Yes. The allegations in the record are that they pose no danger to the officers because of the timeline, right? They were securing custody at the Humane Society, and so they pose no danger to the officers who were executing a search days before that. It's just not possible to happen. I'm not sure that that follows necessarily, but I think I'd like you to focus on the You're challenging both or one or the other? It would be both. Okay. So the seizure, I think what the complaint alleges is that these dogs were seized not because they were aggressive or a threat. In fact, one of them, according to the complaint, was in a cage at the time, right? Correct. They were seized because Mr. Bogan wouldn't play ball and wouldn't come down and speak with law enforcement officers. That's correct. Okay. And so there's a number of defendants here. There's only a couple of individuals who are identified in the complaint, the receptionist and Bogan, the chief of police, correct? Right. And the person from the Humane Society, which is lighter. Correct. But the other officers are not really mentioned at all, other than they're tacked on with a police report that indicates they seized the dogs. Correct. There would be, I mean, the evidence that they are defendants would be based on the police reports that are cited in the appendix. And they're the ones who executed, performed the search at the residence. So they would be co-conspirators in the plot to seize the dogs. Was there anything in the complaint that indicates that they were seizing the dogs for an improper reason? I mean, there's no statements attributed to them, right? Well, there's no statements about retaliatory motive in the complaint about what they said, but their actions are reflected in the notes that were taken of the arrest. Well, the actions are simply that they seized the dog. Actually, the police report indicates that they were aggressive dogs, right? Well, the police, well, to answer your first question, the record does show that they seized the dogs, and they would do that pursuant to their duties as part of the department who has a policy of retaliation. So because they are conspirators in the action, the other actions of the co-conspirators, including Bogan, would be something that they could be held liable for until they renounce the conspiracy. Mr. Newsom was not under arrest at this time, right? At the time of the seizure, no. So he could be taking care of them. There was no need to seize them from the house. That's correct. At the time of the dogs' destruction, he was under arrest. But he had attempted to arrange for somebody else to care for the dogs. He was arrested by the time they were out with the Humane Society? He was arrested by the time they were killed. And incarcerated, right? And incarcerated, yes. But he had arranged for someone to care for the dogs. He had attempted to get them released to one of his relatives. I think it was his mother, if I recall correctly. And everything you're saying here is based on the complaint, right? You're not going outside of the pleadings. The complaint and the police report. Police report. Which is part of the pleading. Yes, correct. So the third factor, and we've talked about it a little bit, is the retaliatory motive. And that's, I think, very important for the Fourth Amendment and the other causes of action. Because it's an intentional action. And, you know, under Fourth Amendment law and also under the substantive due process claim that we have, the fact that it's an intentional action weighs in favor of a finding that it's unreasonable. And that's how you would factor in the asserted retaliation. Yes, that would be one of the factors that you look at. Because it's a totality of the circumstances test, the reason that they do it is something that you would weigh under the totality of the circumstances test. So I believe the Fourth Amendment, based on decided case law in this court and the other circuits, is relatively clear. I think the other question is the due process. And we've broken that down into two points, the 2A and the 2B subpoint. The district court, I think, clearly got it wrong on relying on the Love case, because the Love case didn't deal with intentional actions. And as this Court has found in two other cases, it says, if there's an intentional substantive violation of constitutional rights, Love doesn't apply and the Parrott case doesn't apply. As a result, there is no need to show that post-deprivation remedies are inadequate. If you violate the Constitution, then intentionally violate the Constitution, that is enough to state a claim under the due process clause under this circuit's past decisions. The 2B subpoint, I think, is probably the most difficult subpoint to talk about in terms of where the law sits at this point. The judge below rested his decision on the Hudson case, which is, in my mind, a parallel to the Parrott v. Taylor case. The Supreme Court's decision in the NIC that came out after we filed our brief deals — it is admittedly a takings case, but the rationale in the NIC case was to overrule Williamson, another takings case. But if you look back at Williamson, they relied on due process cases to get to the result. The upshot of that is when there is a violation of the Constitution, I would say the prima facie case occurs when that violation happens if it's an intentional act. And under the reasoning in the NIC case in the Supreme Court, that suggests to me that the result in Hudson was incorrect. And because it's an intentional action, the due process violation also occurs at the time that the intentional act occurs. So I believe under the — the district court was wrong to rely on Hudson, and it has been subsequently overruled by the Supreme Court. Sotomayor, so the relief you seek is for us to vacate, actually reverse the district court, and let this case go on and require the other side to file an answer, I guess? I think that's correct. I think there — I think a couple of things have to happen. The first is that I think it needs to be reversed on the Fourth Amendment and the due process claim, because the court held those things. And if they're not reversed, each point is not reversed, there could be an argument below that they were affirmed because they were not mentioned in the decision. So I think that there has to be a reversal on the Fourth and the Fourteenth. The third thing is that the retaliation claim, which I think would exist on a liberal reading of the pro se complaint, I think probably what has to happen there is to note that those claims exist and to allow the court to deal with those in the first instance when it returns to the district court. So for further analysis of the retaliation claims, which it did not reach. Correct. Correct. And it might be — you know, the other interesting legal issue here is the retaliation based on the Fifth and the Sixth Amendment, which we cited to you a district court case. It doesn't seem to be a lot of well-developed law on the Fifth and Sixth Amendment retaliation claims. Most of those usually get subsumed in the First Amendment analysis claims. But in this case, I think there's a particular reason to perhaps address those, because this is probably, on the allegations, and accepting the allegations is true, this is probably as pure a case you're going to see where there's a — there's a retaliation for the right to — the right not to incriminate and the right for — to seek the assistance of counsel. His allegations are directly addressing the fact that he asserted his right to talk to his counsel, and he asserted his right not to incriminate himself. So that might be a useful thing for this Court to do, but not necessary. Thank you. No one to respond to. Thank you. Thank you. Nothing in the brief requires you to tell us anything in their brief? Oh, they haven't — they've filed briefs, but — They didn't file any briefs. Unfortunately, the — you know, the arguments aren't developed by somebody on the other side. If — All right. Thank you. Thank you. The next case also has a couple of people. It's Ruddy v. Grimcoe, Gustavia Holm, and SLF New York Holdings. The only people appearing today are Melvin Grimcoe and Gustavia Holm. This is a case of foreclosure. We don't have the plaintiff here. It's on submission. But why don't we hear from Grimcoe? Thank you. May it please the Court. Henry Mash of Rifkin-Radler, attorney for Melvin Grimcoe. The district court correctly dismissed the complaint for lack of subject matter jurisdiction. Grimcoe is an attorney? Melvin Grimcoe is the attorney for SLF who commenced the eviction proceedings a year after the judgment of foreclosure. And the plaintiff attempted to invoke the Court's supplemental jurisdiction to assert two State law claims against Mr. Grimcoe. But this Court has held that there's no supplemental jurisdiction when the Court doesn't have original jurisdiction to anchor the case to the Federal courts in the first place. And that's exactly what we have here. The district court was extremely patient with this plaintiff, who was representing himself. The plaintiff had the opportunity to file a complaint, an amended complaint, a second amended complaint. And each time the plaintiff failed to allege the citizenship of each of the defendants, which could have established diversity jurisdiction. And each time the plaintiff failed to state a claim under Federal law. Now, the factual basis for the complaint is that the original foreclosure was invalid because the original holder of the mortgage, People's Choice, transferred that mortgage while it was in bankruptcy proceedings and didn't get authority from the Bankruptcy Court. But this Court just held in the mortgage foreclosure action itself, just in September, that the Bankruptcy Court did, in fact, give People's Choice the authority to transfer that mortgage. And I have the citation for that, if you'd like it. In spite of the stay? There was no stay of the judgment of foreclosure pending appeal. Ah. So they didn't. Right. Okay. But even if this Court were to find that there was original jurisdiction with respect to one of Mr. Krimko's co-defendants, the plaintiff still failed to state a claim under State law. The plaintiff asserted two State law claims, one for professional negligence and one for violation of section 349 of New York's general business law. In New York, you can't have a professional negligence claim unless you have privity with the attorney, unless there's some exception for fraud or collusion. And in this case, the complaint doesn't allege that the plaintiff had an attorney-client relationship with Krimko. Krimko represented the company that was evicting. Foreclosed? No. They represented SLF, which was, eventually had the mortgage and then was evicting his tenants who were there. And there's no heat. The plaintiff can't plausibly allege any exception, because Mr. Krimko wasn't involved in the original mortgage foreclosure. That happened in June 2016. His client didn't get the mortgage and start the eviction proceeding until June of 2017. And with regard to the violation of section 349 of the general business law, that section requires the plaintiff to allege consumer-oriented conduct. That's conduct that's directed to consumers as a whole and not at individuals. And in this case, the allegedly improper foreclosure and the subsequent eviction proceeding is unique to these parties. It's not directed at consumers generally. And for that reason, the plaintiff also failed to state a claim under GBL 349. So just to conclude, there was no supplemental jurisdiction here because the court lacked original jurisdiction, and the plaintiff also, in any event, failed to state a claim that's viable under state law. Thank you. We'll hear from Gustavia Holmes. Gustavia Holmes, you're representing them? Yes, I'm representing Appellees Gustavia Holmes, LLC, the Margolin and Weinreb Law Group, and Allen H. Weinreb, Esquire. They were all sued as defendants in this case, the appellees. Oh, I see. And Gustavia Holmes was the builder? Gustavia Holmes was the successor in interest to the note in the mortgage. They're the ones who initiated the foreclosure action in 2016, and Margolin and Weinreb Law Group was representing Gustavia Holmes, LLC, and Allen Weinreb is the partner of Margolin and Weinreb. In the foreclosure? In the foreclosure action in 2016, correct. We asked this court to affirm the district court's decision granting dismissal of the underlying action as the district court had neither diversity nor federal question jurisdiction. As this court may be aware, this is the plaintiff's appellant's third attempt to undo a judgment of foreclosure and sale in a related district court foreclosure action commenced in 2016 on an investment property, which was later appealed in this court and is currently pending. Not content, the plaintiff appellant Ruddy, excuse me, commenced an action in 2017 under the Federal Debt Collection Practices Act and various New York State claims, which FDCPA claims was subsequently dismissed with prejudice against appellee defendants Gustavia Holmes, LLC, and the Margolin and Weinreb Law Group, LLP, after they moved for dismissal in that 2017 action. This was never appealed. Similarly, in the instant action, this court should affirm the district court's decision for the following reasons. The plaintiff appellant Ruddy, despite the many chances provided by the district court because of his pro se status, failed to properly plead diversity jurisdiction. Plaintiff appellant simply argues that because Gustavia Holmes, LLC, had diversity jurisdiction in the 2016 foreclosure action, it follows that he has diversity jurisdiction in this action. This is not the case, as no diversity jurisdiction was invoked by Plaintiff Ruddy regarding the citizenship of the appellee defendants' limited liability members and the limited liability partners. Despite the filing of the subsequent amended complaints and the guidance in the district court's order given by Kogan, Ruddy never pled diversity of citizenship with any specificity or particularity. Equally, unavailing of this court's jurisdiction were appellant plaintiffs' attempts at, again, invoking Federal question jurisdiction. Regarding the FDCPA claims against Gustavia Holmes and Margolin and Weinreb Law Group, the district court has already held in the related 2017 action commenced by Ruddy that Gustavia Holmes, LLC, and the Margolin and Weinreb Law Group were not debt collectors. The relevant provisions of the FDCPA only apply to the activities of a debt collector, which is defined as any person who uses any instrumentality of interstate commerce with the principal purpose, which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed due or asserting to be owed due to another. You have to admit it's pretty creative. What is? To bring an FDCPA case. It is, Your Honor. And it happens all the time to our firm. We have several defendants or borrowers that they lose in an underlying foreclosure action, and then they launch FDCPA claims as well as State court claims, and sometimes we don't even know we're being sued. We're not served with the papers. Here, based on the collateral estoppel from the 2016 action, and the fact that the 2017 action already dismissed the FDCPA claims with prejudice against Apelli, Gustavia Holmes, and Margolin and Weinreb Law Group, the claims made herein under this action similarly fail. As to a law firm, the vast majority of courts in this Court have found that such an action to enforce an interest in real property does not qualify as debt collection. Regarding the claims involving violations of the Federal Credit Reporting Act, the District Court was correct in its analysis of Ruddy's claims pursuant to 16A1S2A and B. As against Apelli-Gustavia under 16A1SB1, a plaintiff must allege defendant is a furnisher of information, the defendant received notice of the consumer dispute from a consumer reporting agency, and that defendant acted willful or negligent in the noncompliance of that statute. Plaintiff has failed to plead any of the facts to show that the Apelli defendant Gustavia received any notice of dispute from any consumer agency or that any alleged harm or loss of credit resulted in saying. With regard to the additional arguments raised in the appeal regarding the bid price and that the plaintiff in the underlying 2016 foreclosure action failed to name the first mortgagee, the Court must ignore those arguments because they were never raised and were only raised first on this appeal. If there's any questions, I rest on the briefs. Thank you, counsel. Thank you. Hearing no opposition, we will take the case under consideration and reserve decision. Thank you both for appearing. The next two cases on our calendar are on submission, so I will ask the clerk to adjourn court. Let me take my glasses off so I can see what I'm doing. Thank you. Thank you.